# National Bank of Boyertown, Appellant, *v.* Fridenberg.

*Principal and agent—National bank—Banks and banking—Dealing in stocks—Notice.*

Where a bank authorizes its cashier to buy and sell stocks, and the authority of the cashier is apparently general and without limitation as to the character and amount of the securities he is to purchase, and as to whether the transactions should be on margin or for cash, and it appears that the cashier opens an account in the name of the bank with a firm of brokers and buys and sells stocks on the bank's account, both for cash and on margin, and it also appears that large profits were made for the bank on the cash transactions, the bank cannot, after the cashier has absconded, claim that it was not liable for losses on some of the margin transactions.

Argued March 31, 1903. Appeal, No. 5, Jan. T., 1903, by plaintiff, from decree of C. P. No. 1, Phila. Co., Dec. T., 1901, No. 1814, dismissing bill in equity in case of National Bank of Boyertown v. Samuel M. Fridenberg and M. Samuel Fridenberg, trading as S. M. & M. S. Fridenberg. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an account.

BRÉGY, J., found the facts to be as follows:

On July 19, 1900, the cashier of the plaintiff bank opened an account with the defendant brokers in the name of "The National Bank of Boyertown." The first transaction was the purchase of one hundred shares of Union Pacific at fifty-seven and five-eighths, which was paid for in full in a few days; the second was a purchase of two hundred shares of American Tobacco at ninety-three and three quarters, also paid for in full in a few days. (This transaction was on July 31, 1900.) These stocks were sold in a few weeks at a profit, and

from that time on stocks and bonds were bought and sold when it was thought wise to do so. For quite awhile these speculations were made with the express authority of the president and directors of the bank; in fact, it is admitted that all the purchases of stocks and bonds that were paid for in full a few days after they were bought are properly chargeable to the bank. In many cases the securities bought would not be taken away from the brokers' possession by the bank, but would be held by the defendants till the bank wanted them or ordered them sold.

In October, 1901, the cashier absconded, and it was then discovered that he had not only speculated as he was specially authorized to do, namely, by paying in full for his purchases, but that he had bought stocks and bonds without paying for them, upon the strength of the securities in the hands of the brokers defendant. This sort of speculation was without the knowledge of the president of the bank or the directors.

The president of the bank received some $165,000 worth of securities from the defendants after the cashier's flight; ordered the remaining stocks, etc., bought by the cashier's order to be sold.

The balance resulting from this sale, less the amount due upon the various transactions, the bank declines to receive, claiming more. The question turns upon whether the bank is bound by the acts of the cashier. The bank claims that it is only bound by the purchases that the cashier made, when he paid for them in full (what is known as an outright purchase) and that the purchases otherwise made do not bind it.

I cannot agree to that contention.

The bank authorized its cashier to speculate; it sent no notice to the defendants of any limitation of the manner of it.

The bank received large sums as the result of many fortunate ventures, and finally ordered the balance of stocks, etc., on hand sold out and the account closed.

I think this course of conduct bound the bank for all the transactions of its cashier; it being remembered that every purchase and sale was made for the account of the National Bank of Boyertown on the books of the defendants.

I also think the cashier has power to bind the bank for purchases and sales of its securities, and that the order to sell out

the remaining stocks and bonds was an express affirmation of all that he had done.

For these reasons I grant the motion to dismiss the bill.

*Error assigned* was decree dismissing the bill.

*R. C. Dale*, with him *C. H. Ruhl*, for appellant.—Under no circumstances have parties the right to assume that a bank cashier has authority to make on the credit of the bank such speculative transactions as this record discloses : Western Nat. Bank v. Armstrong, 152 U. S. 346 (14 Sup. Ct. Repr. 572) ; West St. Louis Savings Bank v. Shawnee County Bank, 95 U. S. 557 ; Nat. Bank v. Newton Nat. Bank, 66 Fed. Repr. 691 ; Farmers' & Mechanics' Nat. Bank v. Smith, 77 Fed. Repr. 129 ; Jemison v. Bank, 122 N. Y. 135 (25 N. E. Repr. 264) ; Beard v. Milmine, 88 Fed. Repr. 868 ; Burkholder v. Beetem, 65 Pa. 496.

The lack of implied authority in a bank cashier to purchase corporate shares on the credit of the bank is further emphasized when the attention of the court is called to the decisions in which it is held that a national bank has no power to deal in stocks. The only way in which it can lawfully become the owner of shares in any corporation is when such acquisition is for the protection of a loan of money previously made upon the security of such shares : Concord Nat. Bank v. Hawkins, 174 U. S. 364 (19 Sup. Ct. Repr. 739) ; California Bank v. Kennedy, 167 U. S. 362 (17 Sup. Ct. Repr. 831) ; McCormick v. Market Nat. Bank, 165 U. S. 538 (17 Sup. Ct. Repr. 433) ; Zoebisch v. Rauch, 133 Pa. 532.

*R. O. Moon* and *E. Cooper Shapley*, for appellees.—When one party has completely performed and carried out its part of the contract, the other party cannot retain the benefits of such performances and refuse to perform also : 2 Cook on Corp., sec. 681, page 1373.

The rule is well settled that the plea of ultra vires should not prevail when it would not advance justice ; but, on the contrary, would accomplish legal wrong : Leslie v. Lorillard, 110 N. Y. 519 (18 N. E. Repr. 363) ; Whitney Arms Co. v. Barlow, 63 N. Y. 62 ; Seymour v. Spring Forest Cemetery

Assn., 144 N. Y. 333 (39 N. E. Repr. 365) ; Parish v. Wheeler. 22 N. Y. 494; Thomas v. West Jersey R. R. Co., 101 U. S. 71; Wright v. Pipe Line Co., 101 Pa. 204 ; Boyd v. American Carbon Black Co., 182 Pa. 206 ; Union Trust Co. v. Mercantile Library Hall Co., 189 Pa. 263; Oil Creek, etc., R. R. Co. v. Penn. Trans. Co., 83 Pa. 160 ; Pittsburg, etc., R. R. Co. v. Altoona, etc., R. R. Co., 196 Pa. 452.

OPINION BY MR. JUSTICE MESTREZAT, May 18, 1903 :

The plaintiff's bill was properly dismissed on the facts found and stated in the two opinions filed by the learned trial judge.  The bill avers and it is conceded that the defendants, who were brokers, doing business in the city of Philadelphia, were employed by Mory to buy and sell securities for the plaintiff bank.  The account was opened in July, 1900, in the name of " The National Bank of Boyertown " and ran till October, 1901.  The defendants had a previous individual account with Mory, but it was closed more than a year prior to the opening of the account with the bank.  It is not denied that Mory had authority to purchase and sell stocks and bonds for the bank.  It is found as a fact that the bank authorized the cashier to speculate in stocks without any limitation as to the manner of doing so and that it received large sums as the result of fortunate speculations during the running of this account.  After Mory, the cashier, had absconded in October, 1901, the president of the bank received from the defendants securities aggregating $165,000 and ordered the brokers to sell all the remaining stocks and bonds held by them for the plaintiff, which was done, and the balance due the bank on the account was remitted to it.  An itemized account of all the stock transactions between the plaintiff and the defendants was furnished by the latter to the bank prior to the filing of this bill.  The defendants had no private account with Mory, but all their dealings with him subsequent to July 19, 1900, were for and in the name of the bank.  There was but one account of these transactions kept by the defendants and it contained all the securities purchased and sold through Mory from July 19, 1900, when the account was opened, until it was closed in October, 1901.

This bill was filed for an accounting and to compel the de-

fendants to deliver to the plaintiff bank any securities that might be found owing it. It is claimed by the plaintiff that the account should include only such securities as were purchased and sold for cash and should exclude all stocks and bonds not paid for in full at the time of the purchase. The former transactions are alleged to be legitimate and the latter, speculative and on Mory's individual account. The plaintiff has accordingly made two accounts from the account furnished it by defendants, the only account kept by them, and annexed the two accounts to its bill: one containing the transactions admitted to be legitimate and carried on by Mory for the bank, and the other alleged to be speculative and containing transactions carried on for the private account of Mory. It is averred that these accounts were "wrongfully merged into one account" by the defendants. But there is no sufficient evidence to sustain this averment or to warrant the conclusion that the defendants knew the purchase and sales of any of the securities were on Mory's individual account. The defendants had no reason to believe that the bank had confined Mory to cash transactions in his stock dealings on its account. The authority of the cashier in the matter was apparently general and without limitation as to the character and amount of the securities he was empowered to purchase, and as to whether the transactions should be on margin or for cash. Even if the financial standing of Mory had been discredited in the conversation between Wallick and the defendants, proof of which was rejected, it afforded no reason for the latter believing Mory was not authorized to act for the bank in all of the stock transactions subsequent to the date the account had been opened when it is conceded he had the authority to purchase and sell stocks for cash through the defendants as brokers. His standing for honesty and integrity was vouched for by the bank by its employing him as its cashier. His financial condition might be a reason for the defendants refusing to deal with him on his individual account, but it was no evidence of a limitation of his authority to act for a bank of which he was cashier and which admitted his authority to deal for it in securities.

We think the plaintiff must accept the account as a whole and that there is no reason shown by the evidence for excluding the transactions involving the losses. As said by the learned

judge : " There is no equity in the division of what was one account, as far as the defendants were concerned, into two, and thus pocket the profits of one kind of transactions and cast upon the defendants, not the loss of others, but the failure to make more profits than it would have made if certain other transactions had not taken place."

The decree is affirmed.